AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
_____ District of _____

| | |
|---|---|
| United States of America<br>v.<br><br><br><br><br><br><br>*Defendant(s)* | )<br>)<br>) Case No.  2:20-mj-00008-CMM<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ in the county of _____ in the _____ District of _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|


This criminal complaint is based on these facts:




☐ Continued on the attached sheet.

*Complainant's signature*

Christopher N. Cordray,
Special Investigative Services Technician/BOP

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by
 telephonic communication    *(reliable electronic means)*

Date: _____

*Judge's signature*

City and state: _____

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Federal Bureau of Prisons Special Investigative Services Technician Christopher N. Cordray, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I have been a Special Investigative Services Technician with the Federal Bureau of Prisons (BOP) for eight (8) years, and have been a BOP employee for fifteen (15) years. I have a Bachelor of Science Degree in Criminology. I am an "investigative or law enforcement officer" of the United States, that is, an officer of the United States who is empowered by the law to conduct investigations of the offenses enumerated in Title 18 of the United States Code.

2. The information in this affidavit is based on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause in support of an application for a criminal complaint and arrest warrant. The information is not a complete statement of all the facts related to this case.

### PURPOSE OF THE APPLICATION

3. This affidavit is made in support of an application for a criminal complaint and arrest warrant charging Carlos Garcia-Orozco ("GARCIA-OROZCO") with obtaining contraband in prison (buprenorphine), while being a federal inmate, in violation of Title 18, United States Code, Section 1791(a)(2) and (b)(1).

4. This investigation involves GARCIA-OROZCO obtaining contraband in prison while incarcerated at the Federal Correctional Complex in Terre Haute, which occurred within the Southern District of Indiana.

5.     For the reasons stated below, there is probable cause to believe that GARCIA-OROZCO has committed a violation of Title 18, United States Code, Section 1791(a)(2) and (b)(1).

6.     Title 18, United States Code, Section 1791(a)(2) and (b)(1) provides that whoever, being an inmate of a prison, makes, possesses, or obtains, or attempts to make or obtain, a prohibited object; shall be punished as provided in subsection (b) of this statute.  Title 18, United States Code, Section 1791(d)(1)(C) provides that a narcotic drug is a prohibited object. Buprenorphine is a narcotic drug.

**FACTS**

7.     The United States Penitentiary-Terre Haute (USP) is a component of the Federal Correctional Complex-Terre Haute and is located in the Southern District of Indiana. GARCIA-OROZCO is a federal inmate who was housed at the USP on November 3, 2019. An investigation by the Federal Bureau of Prisons (BOP) revealed that the following incident took place at the USP on November 3, 2019.

8.     On November 3, 2019, N.A. (redacted, but known to Affiant) arrived at the USP for the purpose of visiting inmate GARCIA-OROZCO. Officer Jonathon Madison was assigned to work as the Visiting Room Number 1 Officer at the institution, and became suspicious of inmate GARCIA-OROZCO upon his arrival at the Visiting Room. Specifically, inmate GARCIA-OROZCO asked Officer Madison to seat him at the end of a row, far away from the Officer's Station. Additionally, inmate GARCIA-OROZCO and N.A. otherwise acted in a generally "nervous" manner. Officer Madison did seat inmate GARCIA-OROZCO and N.A. away from the Officer's Station, however, he trained several cameras on the pair in order to closely monitor the visit without being detected.

9. During the visit, N.A. got up from her seat and went to the restroom. According to Officer Madison, "A lot of times visitors will go to the bathroom to get the drugs from wherever they hid them, just before they plan to pass them." Officer Madison then concentrated his efforts on N.A. and inmate GARCIA-OROZCO and more closely monitored the visit in real-time via video. At 12:47:38 pm, N.A. exited the restroom and returned to her seat, directly across the aisle from inmate Garcia-Orozco. Both inmate GARCIA-OROZCO and N.A. were seated on the edges of their seats, with their feet extended in front of them. N.A.'s feet were resting directly on the floor, with inmate GARCIA-OROZCO's feet resting on top of hers. At 12:49:40 pm, N.A. reached down with her right hand and placed an unidentified item under her left foot. N.A. and inmate GARCIA-OROZCO then reversed the position of their feet, with inmate GARCIA-OROZCO's feet resting on the floor, and Ms. Aguilar's feet resting on his. In this position, inmate GARCIA-OROZCO's right foot rested on and concealed the unidentified item. At 12:49:54 pm, inmate GARCIA-OROZCO slid his feet back toward himself. N.A. stood up and walked away from their seats, and at 12:50:49 pm, inmate GARCIA-OROZCO reached down and retrieved the unidentified item from under his right foot.

10. Having observed all of this, Officer Madison walked to the Special Investigations Office, and reported this incident to Affiant. Affiant and Officer Madison reviewed the recorded video of this incident. Affiant and Officer Madison returned to the Visiting Room, and Affiant escorted N.A. to a conference room in the Administration Building, while Officer Madison escorted inmate GARCIA-OROZCO to the Lieutenant's Office.

11. Affiant conducted an interview of N.A,, following notification of her rights. N.A. denied providing any contraband to inmate GARCIA-OROZCO, and was subsequently allowed to leave the facility. Affiant then reported to the Lieutenant's Office where he conducted an

3

interview of inmate GARCIA-OROZCO, following notification of his rights. During the interview, GARCIA-OROZCO stated that he swallowed a bindle of drugs in his cell prior to his visit with N.A.. He was then placed in a "dry cell" where his bowel movements were monitored.

12. On November 4, 2019, inmate GARCIA-OROZCO defecated a small green balloon, and was subsequently re-interviewed by Affiant. During this interview, after being reminded of and waiving his custodial interrogation rights, inmate GARCIA-OROZCO admitted to receiving a bindle of Suboxone from N.A. during their visit the day prior. Inmate GARCIA-OROZCO claimed N.A. was sent a pre-packaged bindle of drugs and that she brought them to him during their visit. He confirmed that she placed the drugs on the floor, that he retrieved them from the floor, and then swallowed them.

13. On November 12, 2019, Affiant submitted the drugs to the Indiana State Police Laboratory for analysis. That analysis was completed on December 10, 2019, and it was determined the bindle contained 2.86 grams of a substance containing buprenorphine, a controlled substance better known as Suboxone.

## CONCLUSION

14. Based on the aforementioned factual information, it is my belief that probable cause exists that GARCIA-OROZCO, a federal inmate, has obtained contraband in prison (buprenorphine), a violation of Title 18, United States Code, Section 1791(a)(2) and (b)(1), within the Southern District of Indiana.

15. Accordingly, I respectfully request the Court to issue a criminal complaint and arrest warrant charging GARCIA-OROZCO with such offense.

*/s/ Christopher N. Cordray*
Christopher N. Cordray
Special Investigative Services Technician
Federal Bureau of Prisons

4

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by <u>telephonic communications</u> (*reliable electronic means*)